## Commonwealth v. General Foods Corporation

440

*Walter E. Alessandroni*, Attorney General, for Commonwealth.

*Reed, Smith, Shaw & McClay*, for defendant.

SWOPE, P. J., September 19, 1966.—General Foods Corporation appeals herein from a resettlement by the taxing departments of the Commonwealth of its franchise tax for the fiscal year ended March 31, 1960. The case was heard de novo on agreement to try without a jury. Certain facts were agreed upon by and between the parties, the stipulation of which forms a part of the record in the case.

Defendant's tax liability was increased by a resettlement of the Department of Revenue on February 5, 1963. The prayer of defendant's petition for review was refused by the Board of Finance and Revenue on November 12, 1963. The controversy involves the numerators of the 2nd and 3rd allocating fractions — the wages and salaries fraction and the gross receipts fraction—of the tax imposed by the Act of June 1, 1889, P. L. 420, sec. 21, as amended, 72 PS §1871 (b) et seq. (foreign franchise tax). Defendant contests the resettlement insofar as it adds back to the numerator of the wages and salaries fraction those wages and salaries paid to its personnel in Pennsylvania and the inclusion in the numerator of the gross receipts fraction of certain gross receipts which it claims are properly allocated outside of Pennsylvania. The Commonwealth, in its response to the appeal, in addition to sup-

porting the resettlement, now contends that gross receipts of defendant which are attributable to brokers' sales throughout the world should also be added to the numerator of the gross receipts fraction.

## FACTS

The record shows that defendant is a foreign corporation which carries on business in all the 50 States. It has been subject to Pennsylvania's foreign franchise tax since its inception in 1935. In years prior to 1960, the extent of defendant's tax liability had been determined by assigning wages, salaries and gross receipts to the company offices which supervised defendant's sales force and to which they reported. As a result of the national program of consolidation of its sales and distribution activities, which had been embarked upon by defendant between 1958 and 1960, General Foods Corporation had no sales offices in Pennsylvania during the period for which the present tax was levied. Instead, the Pennsylvania territory was organized under district offices in Youngstown, Ohio and Newark, Delaware. Under the previously established method of constructing the fractions in question, defendant's tax liability for the period in question was substantially reduced from prior years. An investigation by the taxing authorities was instituted which led to the resettlement now in dispute. There are three items in question, which will be discussed separately.

## I. WAGES AND SALARIES ALLOCATION

The statute imposing the tax provides:

"The amount assignable to this Commonwealth of expenditures of the taxpayer for wages, salaries, commissions, or other compensation to its employes, shall be such expenditures for the taxable year as represent the wages, salaries, commissions, or other compensation of employes not chiefly situated at, connected with, or sent out from premises for the transaction of

business maintained by the taxpayer outside the Commonwealth": Act of June 1, 1889, P. L. 420, sec. 21, as amended, 72 PS §1871(b)·(3).

Defendant's personnel in Pennsylvania are clearly not chiefly situated at or sent out from defendant's district offices in Ohio or Delaware. Defendant contends, nevertheless, that its personnel in Pennsylvania are "chiefly connected with" the offices in Ohio and Delaware so as to justify the exclusion of their wages and salaries from the numerator of that fraction. The Commonwealth, on the one hand, disputes this connection on the basis that the personnel's activities in Pennsylvania far outweigh their slight connection with the offices out of State and that their wages and salaries are properly allocable to Pennsylvania. The Commonwealth further argues that defendant's personnel worked out of their homes and were chiefly situated at their homes so as to justify allocation to Pennsylvania.

The weighing of "activities" against "connection", as proposed by the Commonwealth, is a novel approach to the problem of how to properly construct the wages and salaries fraction. This court finds it unnecessary to determine in this case whether such a test is permissible, in that we feel that the connection between defendant's personnel in Pennsylvania with the out of State offices satisfied the statutory language and requires allocation of the wages and salaries out of State. Furthermore, it appears that the personnel in Pennsylvania did not work out of their homes, as contended by the Commonwealth.

It is an unquestioned principle that words and phrases used in a statute shall be construed according to their common and approved usage: Statutory Construction Act of May 28, 1937, P. L. 1019, art. III, sec. 33, 46 PS §533. In the business context relevant to the statute to be interpreted, the word "connected" is de-

fined as "related, affiliated, associated, having something to do with": Webster's New Twentieth Century Dictionary, 2d ed., 1964. The evidence in this case shows that there was a strong connection between the field personnel and the district offices. The personnel in Pennsylvania were territory managers and sales representatives. While they resided in Pennsylvania in order to efficiently reach their work assignments, they were identified, however, solely with the district offices as to business address and return address on their stationery. Their homes were not identified with General Foods; nor were their home addresses or telephone numbers listed under General Foods. They were neither required to keep nor were they reimbursed for maintaining office facilities in their homes. Most of their time was spent on the road. The personnel in Pennsylvania were closely supervised and controlled by the district managers located at the district offices. All useful purposes which would have been served by the daily physical presence of the employes in question at the district offices were accomplished instead through detailed controls effectuated by modern means of communication. The work of the territory managers and sales representatives was assigned by the out of State office, and tight control was kept on their activities. The field sales personnel reported to the district manager and no one else. They were required to submit to the district office a daily route list and work plan and to make immediate report of any changes therein. They were also required to submit a daily activity report and a weekly recapitulation of their activity. Defendant showed a constant flow between the field sales personnel and the district office of special instructions and reports on the accomplishment of special assigned activities. The testimony further established that field service personnel spent 10 to 15 percent of their working time at the district offices receiving instruc-

tions and attending sales meetings at which they were given specific directives for the accomplishment of their individual responsibilities regarding the achievement of the company's sales objectives in their districts.

In light of these facts, we conclude that defendant's Pennsylvania personnel were "chiefly connected with" the district offices located out of State and that their wages and salaries were improperly allocated to Pennsylvania in the resettlement in question.

## II. GROSS RECEIPTS

As to gross receipts, the act provides:

"The amount of the taxpayer's gross receipts from business assignable to this Commonwealth shall be, (1) the amount of its gross receipts for the taxable year, except those negotiated or effected in behalf of the taxpayer by agents or agencies chiefly situated at, connected with, or sent out from premises for the transaction of business maintained by the taxpayer outside the Commonwealth . . .": Act of June 1, 1889, P. L. 420, sec. 21, as amended, 72 PS §1871 (b) (3).

Even if the gross receipts in question had been negotiated or effected by defendant's agents in Pennsylvania, they would not be allocable to the Commonwealth in view of our holding herein that these agents were chiefly connected with out of State offices. Actually, however, the field sales personnel in Pennsylvania were no more than promotional men with neither the authority nor the responsibility for negotiating or effecting contracts. The territory manager's job was to persuade General Foods' customers to present the company's products to the purchasing public in the most advantageous way possible and to coordinate the promotional activity of General Foods and its customers. The sales representatives were merely "missionary men" whose job was the implementation of pro-

motional efforts at the retail level by such activities as securing shelf space for General Foods products and helping retail stores in the areas of distribution and advertising. Thus, while these personnel might be said to have been engaged in selling General Foods' products in the broadest sense, they in no way negotiated or effected the gross receipts. See Commonwealth v. Frick Company, 51 D. & C. 329, 55 Dauph. 62 (1944).

The actual negotiation or effecting of sales by defendant was described in the testimony as follows:

"Q. How are sales made by General Foods?

"A. Well, first of all as we discussed, the customer must be approved to buy General Foods' products. When a customer is approved, we send to that prospective customer a set of price lists and terms of sales from that district sales office. When this is done, the customer may then submit orders for General Foods products. The customer's order to General Foods is in effect an offer to buy. Our price lists are terms of sale, which are part of the exhibits, incidentally, specifically say, 'this is not an offer to sell.' Therefore, when the customer does submit his order, this in effect becomes his offer to buy.

"Q. At Newark or Youngstown?

"A. Yes, a district sales or distribution section like Newark or Youngstown. Shipping papers would be processed, electronic data processing, arranging for carriers equipment, rail or car or trucks and so forth, would be made by our traffic and transportation department, customer credit would be checked and evaluated at that present point. After all approvals are made by the district sales manager, who is the only person at that level who can approve a customer's offer to buy or his orders, then the goods ultimately are located upon a car carrier's truck or rail car and shipped to the customer".

It is clear that the terms of the contract, its accept-

ance and other necessary arrangements were effected at the district offices. The Commonwealth's reliance on Commonwealth v. Quaker Oats Company, 350 Pa. 253 (1944), is not well founded, since the facts in the case before us show more than a mere formal acceptance of a contract, the terms of which had already been established. In the case presented by the instant appeal, the actual terms of defendant's contracts with its customers were not negotiated or effected except at the district sales office level.

The Commonwealth has suggested alternatively that the negotiation and effecting of gross receipts occurred at the time defendant's customers were given approved status; that in most cases, this was accomplished prior to 1953, at a time when defendant's agents were located at Pennsylvania offices, and that the gross receipts from such customers must be taken as mere repeat orders relating back to the original approval, and thus allocable to Pennsylvania. Mere approval of customers, however, does not constitute the making of any sales or negotiation or effecting of gross receipts: General Foods Corporation v. Pittsburgh, 383 Pa. 244, 248 (1955).

The conclusion is inescapable that the agents located at Youngstown or Newark negotiated or effected the gross receipts here disputed, and that such gross receipts are, under the statutory language, properly allocated out of State.

### III. Gross Receipts From Broker's Sales

What has been said under section II herein applies with equal force to this item. The brokers maintained by defendant performed the same promotional functions as did the sales personnel in Pennsylvania. They had neither the authority nor the responsibility for negotiating or effecting sales contracts. The gross receipts arising from the brokers' activities were also, in fact, actually negotiated or effected by defendant's

personnel at the district offices, and are likewise allocable out of State.

In accordance with all of the foregoing, we make the following

ORDER

And now, September 19, 1966, the within appeal is sustained. The resettlement of foreign franchise tax of General Foods Corporation for its fiscal year ended March 31, 1960, made by the Department of Revenue on February 5, 1963, and approved by the Department of the Auditor General on February 19, 1963, is hereby set aside, and the original settlement for the period in question, which was settled and approved by the same departments on February 8, 1961, and March 1, 1961, respectively, is reinstated in accordance with the foregoing opinion, unless exceptions be filed hereto within 30 days. The prothonotary is directed to give notice of this opinion and order to all parties or their counsel forthwith.